# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. CR409-167 |
| ) | |
| DONTE MONTRESE BRADLEY ) | |

## REPORT AND RECOMMENDATION

Following the warrantless stop of a vehicle in which defendant Donte Bradley was riding as a passenger, police found a pistol that forms the critical evidence in this unlawful firearms prosecution. Bradley has moved to suppress that pistol, contending that it was seized as the result of an "illegal stop" made "without probable cause." (*Id.* at 1.) For the following reasons, his motion should be **DENIED**.

## I. FACTS

On the evening of May 21, 2009, Star Corporal Mark Fletcher of the Savannah-Chatham Metropolitan Police Department was sitting in his patrol car, which he had parked in an empty lot located on Montgomery

Street in downtown Savannah, Georgia.[1] This part of the city is known for its high crime rate: robberies, burglaries, prostitution, drug trafficking, and gunfire are frequent occurrences in this area. Cpl. Fletcher had his front windows rolled down on that clear May night. At approximately 11:00 p.m., he heard gunshots that, to his experienced ear, seemed to come from about one block to the west of his position. He immediately pulled his vehicle forward and issued a radio transmission to inform his dispatcher and other officers in the area about the weapon discharge. From his vantage point, he saw a white car proceeding down 32nd Street from Martin Luther King, Jr. Boulevard, leaving the vicinity where the gunshots had just occurred. It was the only vehicle on the roadway at that time. The car then turned south onto Montgomery Street and proceeded past the officer's location at a normal rate of speed. Concerned that the car's occupants may have just participated in or witnessed a shooting, Cpl. Fletcher decided to initiate a traffic stop to investigate his suspicions. Officer Petit-Frere arrived as backup just as Cpl. Fletcher was in the process of effecting the stop.

---

[1] The Court's factual recitation is based upon the suppression hearing testimony of Cpl. Fletcher and Officer Romel Petit-Frere.

Cpl. Fletcher noted that there were three people in the car as he approached the driver's door: a female driver, a child in the front passenger seat, and a man in the right rear seat. The rear-seat passenger, later determined to be defendant Bradley, was "wiggling around" and making movements as if he was attempting to hide or remove something from under the front passenger seat or center console. Interpreting this "fidgeting" behavior as a potential threat to officer safety, Officer Petit-Frere approached the rear-seat passenger as Cpl. Fletcher spoke with the driver of the vehicle. Petit-Frere opened the rear passenger door and asked defendant to step out of the vehicle. Defendant, however, failed to comply with this directive. At this point, Officer Petit-Frere and a fellow officer who had arrived as additional backup pulled defendant from the vehicle. Defendant tried to slip out of his shirt and broke free for a moment before the officers took him to the ground and handcuffed him. A moment later, Cpl. Fletcher illuminated the rear floorboard area of the car with his flashlight and noticed a pistol handle protruding from under the front passenger seat. Officer Petit-Frere then retrieved the pistol, which felt warm as if it had just

been fired.[2]  Defendant was then placed under arrest.

## II. STANDING

Before reaching the merits of defendant's suppression motion, the Court must first address the government's contention that defendant lacks "standing" to assert the protections of the Fourth Amendment, as he had no expectation of privacy in a vehicle he occupied as a passenger. (Doc. 16 at 2.)  In support of this proposition, the government cites cases holding that a "mere passenger" has no reasonable expectation of privacy in the vehicle in which he is riding and therefore cannot contest the *search* of that vehicle on Fourth Amendment grounds.  This is certainly a correct and well-established proposition, as the Supreme Court, the Eleventh Circuit, and this Court have made clear on numerous occasions. *Rakas v. Illinois*, 439 U.S. 128, 140, 143 n.12, 148-49 (1978) (defendants who asserted neither a property nor possessory interest in an automobile in which they were passengers had no legitimate expectation of privacy in the vehicle sufficient to challenge its search as violative of the Fourth Amendment); *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir.

---

[2] The officers later discovered that the gun had been stolen during a burglary.

2008) (under *Rakas*, a passenger has no legitimate expectation of privacy because he has no right to exclude others from the car); *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005) (a mere passenger has no legitimate expectation of privacy in the area under the seat of the car in which he is riding); *United States v. Ronald Renardo Smith*, CR408-208 (S.D. Ga. Report and Recommendation entered November 10, 2008).

The proposition that the government has asserted, however, is not responsive either to the legal issues raised by defendant's motion or the evidence adduced at the suppression hearing. Defendant Bradley has specifically alleged that his Fourth Amendment rights were infringed by the "illegal stop" of the vehicle in which he was riding. The question whether a vehicle passenger has "standing" to contest the *stop* of a vehicle in which he was riding is not addressed by the government, either in its initial brief or post-hearing letter.[3] As the Court pointed out at the

---

[3] After the suppression hearing, the government sent a letter to the Court (copied to defense counsel) representing that the case of *United States v. Lee*, ____ F.3d ____, 2009 WL 3415706 (11th Cir. 2009), "unequivocally" supported its position that defendant lacked standing. Such letters are highly disfavored for numerous reasons. Chief among them is the public's qualified constitutional right to know what its courts are up to: behind-the-scenes communications to a court in the form of unfiled letters compromises this important constitutional protection. *See In re Unsolicited Letters to Federal Judges*, 120 F. Supp 2d 1073 (S.D. Ga. 2000). Any communication from counsel pertaining to the merits of a pending case should come

suppression hearing, that issue -- which is squarely before this Court -- has recently been considered and decided by the Supreme Court of the United States. In a unanimous decision, the Supreme Court held that a passenger in an automobile pulled over by the police is "seized" for Fourth Amendment purposes and, therefore, is entitled to contest the constitutionality of the roadside stop. *Brendlin v. California*, 551 U.S. 249, 256-58 (2007). As *Brendlin* makes clear, a defendant challenging the legality of the stop of a vehicle in which he is riding as a passenger does not need to establish a privacy interest in the vehicle (as he must do when challenging a search of that vehicle), for it is the seizure of his *person* that is at issue, not the search of someone else's property. When an officer stops a vehicle he effectively seizes not only the driver but all passengers in the vehicle, thus affording those passengers the right to

---

in the form of a memorandum or brief filed with the Clerk and made a part of the record. The Court's response to the government's letter is this: the *Lee* case stands for the settled proposition that a passenger in a private car lacks a legitimate expectation of privacy in the interior of the vehicle sufficient to confer "standing" to challenge the warrantless *search* of the vehicle. But as explained in the text above, that case has no bearing on the question of whether a vehicle passenger has standing to contest the initial *stop* of the vehicle in which he is riding, for Lee argued only that "the *search* violated the Fourth Amendment." *Id.* at *4 (emphasis added). Bradley, on the other hand, argues that the pistol found by the police was the product of an "illegal stop." The government ignores this distinction.

challenge the constitutionality of the stop. *Id.* at 255-56, 263. Defendant Bradley has expressly asserted that the stop of the vehicle in this case was unlawful. He is perfectly entitled to assert that his Fourth Amendment rights were violated in this context, as a unanimous Supreme Court and the lower federal courts have uniformly recognized. *Brendlin* 551 U.S. at 258-59 (noting that its conclusion that a vehicle passenger has standing to challenge the constitutionality of a traffic stop "comports with the views of all nine Federal Courts of Appeals, and nearly every state court, to have ruled on the question.").[4]

There is another reason why the government errs in framing this case as presenting a vehicle-search, rather than a vehicle-stop, issue. The government overlooks the fact that the pistol that forms the basis of the firearms charges against defendant Bradley was not discovered as the result of a vehicle search. The evidence establishes that the weapon was spotted by Cpl. Fletcher when he shined his flashlight into the vehicle

---

[4] The government has long asserted in this District that a passenger lacks standing to challenge the stop of a vehicle in which he was riding. That argument has been rejected by this Court before. *See, e.g., United States v. Wehrle*, CR406-333 (S.D. Ga. Report and Recommendation Jan. 29, 2007). Now that the Supreme Court has clearly spoken on this question, expressly rejecting the government's position, the Court does not expect government counsel to reassert this argument in future cases.

7

and observed the pistol lying in plain view on the rear floorboard.[5] Illuminating the interior of a vehicle by means of a flashlight does not constitute a search. *Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (it is "beyond dispute" that shining a flashlight to illuminate the interior of a car trenches upon no right secured under the Fourth Amendment); *United States v. Desir*, 257 F.3d 1233, 1236 (11th Cir. 2001) (crack cocaine observed in "plain view" when officer shined his flashlight through window of car); *see United States v. Dunn*, 480 U.S. 294, 304-05 (1987) (officers' use of flashlight to illuminate interior of barn did not constitute a "search"); *United States v. Elkins*, 300 F.3d 638, 652 (6th Cir. 2002) (same). Thus, there is simply no factual basis for the government's argument that defendant lacks standing to object to the legitimacy of the search of his vehicle, as the pistol that forms the basis of this prosecution was not the product of any such search.

Few things are clearer about Fourth Amendment doctrine than

---

[5] Cpl. Fletcher shined his flashlight into the vehicle after defendant had been forcibly, but lawfully, removed from the vehicle by other officers. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997) (police officer making a traffic stop may, as a matter of course, order passengers to exit the vehicle). When defendant failed to comply with Officer Petit-Frere's lawful order to exit the vehicle, the officer was entitled to employ reasonable force to remove defendant from the vehicle.

this: the passenger of a motor vehicle has standing to challenge the constitutionality of the stop of that vehicle by the police. *See United States v. Ross*, 280 F. App'x 947, 948 (11th Cir. 2008) (citing *Brendlin*). Defendant clearly mounts such a challenge in this case. The government's no-standing argument is utterly bogus.

## III. THE MERITS OF DEFENDANT'S FOURTH AMENDMENT CLAIM

Bradley argues that because the officer lacked "probable cause" to conduct a traffic stop of the vehicle in which he was traveling, the pistol later found by the police must be suppressed as the tainted product of this initial "illegal" seizure. (Doc. 14.) The government indicated that it would file a brief addressing "the lawfulness of the law enforcement action" in this case, but it has not done so. (Doc. 16 at 2.)

The Court assumes that Officer Fletcher lacked probable cause to stop the vehicle that he spotted moments after hearing gunfire. The Fourth Amendment, however, does not impose a probable cause standard for gauging the lawfulness of all warrantless seizures. It is well settled that an officer who lacks probable cause to effect an arrest is nevertheless entitled to conduct a brief "investigatory" seizure where he has a

9

reasonable, articulable suspicion based on objective facts that an individual is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."); *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). The *Terry* reasonable suspicion standard, like the probable cause standard, cannot be defined with precision: it requires more than an "unparticularized suspicion or 'hunch,'" *Terry*, 392 U.S. at 27, but is "obviously less demanding" than the level of suspicion required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 8 (1989); *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). What is required is "some minimal level of objective justification" for the belief that the person stopped has engaged in some form of criminality. *INS v. Delgado*, 466 U.S. 210, 217 (1984); *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995). Such a "reasonable suspicion" determination may be based on commonsense judgments and inferences about human behavior. *United States v. Cortez*, 449 U.S. 411, 418

(1981). The reasonable suspicion standard does not set "a particularly high bar." *United States v. Abdus-Price*, 518 F.3d 926, 929 (D.C. Cir. 2008).

It has long been established that "[t]he *Terry* rationale permits police officers to stop a moving vehicle based on a reasonable suspicion that its occupants are violating the law." *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989); *United States v. Glinton*, 2009 WL 2974883 at *1-2 (11th Cir. Sept. 18, 2009); *Tapia*, 912 F.2d at 1370 n.3; *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990). The question here, therefore, is whether the police had a sufficient level of suspicion to justify a warrantless vehicle stop and consequent "seizure" of Mr. Bradley.

The Court is persuaded that, under the particular circumstances of this case, Officer Fletcher was entitled to stop the subject vehicle in order to investigate his suspicions that its occupants had just committed a crime, or perhaps had witnessed criminal activity. *See United States v. Bolden*, 508 F.3d 204, 206 (5th Cir. 2007) (noting that *Illinois v. Lidster*, 540 U.S. 419 (2004) upheld a suspicionless stop of an automobile to look for witnesses to a crime). It is undisputed that Officer Fletcher heard

nearby gunfire just moments before spotting a vehicle coming from the intersection where the shots were fired. The officer had a clear view of the area and saw no other vehicles on the roadway. While the officer conceded that he could have missed spotting a fast moving vehicle traveling away from that area, a police officer is not required to exclude every possibility of innocent behavior before effecting a *Terry* stop. *Wardlow*, 528 U.S. at 125-26 (in allowing investigatory stops to resolve "ambiguous" circumstances, "*Terry* accepts the risk that officers may stop innocent people"). While the officer did not know for certain that the occupants of this vehicle had fired any shots or had been shot at by some other person, the Constitution does not demand certainty by the police, even under the more rigorous probable cause standard. *See Sokolow*, 490 U.S. at 8. On balance, the Court finds that at this late hour, in this high crime neighborhood, Officer Fletcher acted reasonably when he elected to stop the only vehicle in sight that was proceeding away from the area where he had just heard gunfire. Numerous other courts have found reasonable suspicion under similar circumstances. *See, e.g., United States v. Tyson*, 307 F. App'x 664 (3rd Cir. 2009) (police officer who heard gunshots in a high crime area during early morning

hours had reasonable suspicion to seize defendant, who was seated in a vehicle with tinted windows in an area judged to be the point of origin for the shots, where only two minutes had lapsed between the gunshots and the encounter); *United States v. Bolden*, 508 F.3d 204 (5th Cir. 2007) (officer who heard nearby gunfire had reasonable suspicion to stop a fast-moving vehicle he spotted a minute after the shots); *United States v. Hicks*, 182 F.3d 933, 1999 WL 317531 (10th Cir. May 20, 1999) (unpublished) (officer who heard gunshots had reasonable suspicion to stop vehicle speeding away from the scene, where he observed no other vehicle traffic in the area); *United States v. Henning*, 906 F.2d 1392 (10th Cir. 1990) (same).

## CONCLUSION

Even as a mere passenger in a vehicle, defendant Bradley is entitled to challenge the lawfulness of the traffic stop conducted by Officer Fletcher, as any police "seizure" must meet Fourth Amendment standards. Bradley, however, has failed to demonstrate that he was subjected to an unlawful seizure, for the officer was justified in stopping the vehicle in order to investigate his reasonable suspicion that its occupants had just engaged in criminal activity. Thus, Bradley's motion

13

to suppress should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  5th  day of November, 2009.

s/ G.R. SMITH  
**UNITED STATES MAGISTRATE JUDGE**  
**SOUTHERN DISTRICT OF GEORGIA**